**Willie A. SWANN, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 92–370.

United States Court of Veterans Appeals.

June 16, 1993.

**230**

Willie A. Swann, pro se.

James A. Endicott, Jr., Gen. Counsel, Norman G. Cooper, Acting Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Rosalind E. Masciola, were on the pleadings for appellee.

Before FARLEY, HOLDAWAY and IVERS, Associate Judges.

HOLDAWAY, Associate Judge:

Appellant, Willie A. Swann, appeals from a February 7, 1992, decision of the Board of Veterans' Appeals (BVA or Board) which denied entitlement to service connection for post-traumatic stress disorder (PTSD). The Secretary of Veterans Affairs has filed a motion for summary affirmance. The Court has jurisdiction of the case under 38 U.S.C.A. § 7252(a) (West 1991). The Court will affirm the BVA decision.

## I. BACKGROUND

Appellant served in the Air Force from August 4, 1965, until January 10, 1969. From December 12, 1966, until December 14, 1967, he served as a refueling operator with the 637th Supply Squadron, Tuy Hoa Air Base, Vietnam. In January 1987, appellant filed his initial claim for service connection for PTSD. The Veterans' Administration (now Department of Veterans Affairs) (VA) responded in May 1987, requesting that appellant furnish more detailed information concerning his PTSD claim. Specifically, the VA requested detailed information regarding a

> particular life threatening episode which occurred in combat.... This information should include the date (as exact as possible, at least, the month and the year), your unit assignment at the time of the event, and the names and unit assignments of any friends or comrades who were killed or wounded in the event.

In July 1987, appellant's service representative submitted records showing appellant's service as a refueling operator in Vietnam. Appellant submitted a statement dated July 7, 1987, discussing his alleged stressors. Appellant claimed that upon arrival to Tan Son Nhut Air Base in Saigon, Vietnam, he was given a series of shots that made him ill. That night he lay in a tent, "nauseated, scared, and hurting with pain and cramps" as a mortar attack went on in the camp. Appellant stated that while everyone else ran to the bunkers, he

had to lie there, too ill to move. He recalled the "feeling of helplessness, fear, and pain." The next day, appellant was flown to his permanent station, Tuy Hoa Air Base. He was assigned to the 96th Combat Support Group Base Fuels. He serviced airplanes which he claims he later found out were spraying Agent Orange. In May 1967, during a mortar attack on the base, a mortar concussion knocked him over, and he hurt his knees. He was put on crutches for three weeks. Appellant then related how South Korean Army soldiers (known as the ROKs) killed a Viet Cong and hung the body in a tree near the flight line for weeks. Appellant recalled the sight and smell, seeing the flesh falling from the corpse little by little, and wondering if he would be next.

In May 1987, appellant requested a VA examination. The examination was performed in July 1987. Dr. Fuller diagnosed a bipolar disorder by history, now in partial remission, and indicated that PTSD was not found during the examination. Appellant's claim for service connection was denied by a rating decision dated November 4, 1987.

Appellant was evaluated at a private psychiatric clinic in July 1988, by Dr. Crummie. In a letter dated July 22, 1988, Dr. Crummie stated that appellant had been in for eight visits since July 13, 1988. Dr. Crummie opined that appellant "is suffering from a [PTSD], secondary to his experiences in Viet Nam." Also diagnosed at that time by Dr. Crummie was a manic type bipolar disorder.

In September 1988, Dr. Papazian performed a VA compensation and pension examination at the VA Medical Center in Fayetteville, North Carolina. On October 11, 1988, after performing psychological testing (including the Minnesota Multiphasic Personality Inventory (MMPI)), Dr. Papazian recommended consideration of diagnoses of PTSD and bipolar disorder (by history). Dr. Papazian recorded appellant's history and noted that "[a]lthough [appellant] was not involved in any direct combat mission, he was caught in mortar fire *numerous times...*." (Emphasis added.) As part of the same examination, Dr. Full-

er also performed a psychiatric examination. Dr. Fuller's diagnoses were PTSD and a bipolar disorder now in remission, by history. On December 5, 1988, the rating board denied service connection for chronic PTSD.

On December 18, 1990, the BVA rendered a decision denying entitlement to service connection for PTSD. The Board found that

> the evidence of record does not actually establish a link between this asserted diagnosis [PTSD] and the veteran's military service. The appellate record does not reflect an objective stressor sufficient enough in severity to give rise to such a diagnosis. We note that the veteran's military occupational specialty was one which was unlikely to result in direct enemy contact. Further, medals and citations received by the appellant were awarded for commendable service rather than valor. In addition, it must be noted that the veteran's allegations of stressors must be viewed in the proper context. Specifically, he is seeking monetary benefits which has a significant impact on the probative value of his allegations.

*Willie A. Swann,* BVA ____, at 4 (Dec. 18, 1990).

On October 17, 1991, this Court issued an order remanding the matter to the BVA for consideration of the case in light of all VA medical records, including those which were apparently in the VA's possession at the time of the December 1990 decision. 1 Vet.App. 618. Specifically, these records included the August 7, 1989, report of Dr. Crummie and the MMPI assessment test given at the VA Medical Center in Fayetteville, North Carolina, believed to be dated October 11, 1988.

On February 7, 1992, the Board issued the decision on remand, denying service connection for PTSD. *Willie A. Swann,* BVA ____ (Feb. 7, 1992). A timely appeal to this Court followed.

## II. ANALYSIS

■ Appellant alleges that pursuant to 38 C.F.R. § 19.183(b) (1992), on remand his

claim should not have been assigned to the same panel of BVA members which had previously considered his claim. Section 19.183(b) provides that "[m]embers of the Board signatory to the decision on an administrative appeal will disqualify themselves from acting on a *subsequent* appeal by the claimant on the same issue." (Emphasis added.) This provision does not apply to a remanded claim, because a remand is based on the *same* appeal, not a *subsequent* appeal.

■ Recently replaced paragraphs of the VA MANUAL M21-1 contain provisions for development of a claim for PTSD. The new manual provisions applicable to the claim before the Court are:

e. **Reasonably Supportive Evidence of Stressors in Service.** Any evidence available from the service department indicating that the veteran served in the area in which the stressful event is alleged to have occurred and any evidence supporting the description of the event are to be made part of the record. If the claimed stressor is related to combat, in the absence of information to the contrary, receipt of the Purple Heart, Combat Infantryman Badge, Bronze Star, and other similar citations is considered supportive evidence of participation in a stressful episode. Other supportive evidence includes, but is not limited to, plane crash, ship sinking, explosion, rape or assault, duty on a burn ward or in graves registration unit. POW status is conclusive evidence of an inservice stressor.

f. **Development for PTSD.** If the evidence shows the veteran engaged in combat with the enemy and the claimed stressor is related to combat, no further development for evidence of a stressor is necessary. See subparagraph e above. If the claimed stressor is not combat related, a history of a stressor as related by the veteran is, in itself, insufficient. Service records must support the assertion that the veteran was subjected to a stressor of sufficient gravity to evoke the symptoms in almost anyone. The existence of a recognizable stressor or accumulation of stressors must be supported. It is important the stressor be described as to its nature, severity and date of outcome.

MANUAL M21-1, Part VI, para. 7.46(e), (f) (Sept. 21, 1992). Although these new provisions became effective after appellant filed his appeal with the Court, the Court is required to apply these substantive changes, which are more liberal than the previous standards, to appellant's claim. *See Hayes v. Brown*, 5 Vet.App. 60, 66–67 (1993) (quoting *Karnas v. Derwinski*, 1 Vet.App. 308, 313 (1991)). In its February 1992 decision, the BVA noted that the December 1990 decision found that the evidence of record did not actually establish a link between the diagnosis of PTSD and the veteran's military service. Additionally, the BVA found that the augmented record remained deficient, as there was no evidence of a verifiable stressor. The BVA relied on this Court's opinion in *Wood v. Derwinski*, 1 Vet.App. 190 (1991), in determining that appellant's

military specialty did not expose him to more than an ordinary stressful environment in Vietnam, as there was a considerable passage of time between [appellant's] alleged stressors in the 1960's and the first diagnosis of [PTSD] in 1988 which affect the weight to be given his statements, and as [appellant's] alleged stressors are wholly uncorroborated, we are not bound to accept the recent diagnoses of [PTSD] as being the result of [appellant's] wartime service.

*Willie A. Swann*, BVA ____, at 5–6 (Feb. 7, 1992). Although appellant's appeal was filed with this Court after MANUAL M21-1, paragraph 7.46 went into effect, the Court concludes that the BVA satisfactorily complied with the new requirements.

■ A finding concerning service connection, or no service connection, as in this case, is a finding of fact. *Wood*, 1 Vet. App. at 192. The Court reviews the BVA's factual findings only to determine whether they are "clearly erroneous." *Gilbert v. Derwinski*, 1 Vet.App. 49, 52–53 (1990).

"[I]f there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, we cannot overturn them." *Id.* After consideration of the record, the Court concludes that the decision of the Board is plausible.

■ The BVA was not bound to accept appellant's uncorroborated account of his Vietnam experiences, nor was it bound to accept the opinions of Dr. Crummie that appellant's PTSD was secondary to his wartime experiences in Vietnam. *See Wood,* 1 Vet.App. at 192; *Wilson v. Derwinski,* 2 Vet.App. 614, 618 (1992). As noted by the BVA, neither his service records nor his specialty (refueling specialist) indicates that he was exposed to more than an ordinary stressful environment. *See Wood,* 1 Vet.App. at 192–93. Appellant's accounts of the two mortar attacks at Tan Son Nhut Air Base and Tuy Hoa Air Base, and of the Viet Cong corpse hanging in the tree, even if true, do not portray situations where appellant was exposed to more than an ordinary stressful environment, particularly where there is no evidence that the mortar attacks' impact areas were close to appellant or resulted in any casualties. As noted above, the MANUAL M21–1 provides that if a claimed stressor is not combat related, a history of a stressor as related by the veteran is, in itself, insufficient. Simply put, the BVA's finding was plausible that these isolated "stressors" are not beyond the ordinary, i.e., they would not, in and of themselves, evoke symptoms in "almost everyone." Appellant stated that there are other stressors which he cannot reveal due to his high security clearance. If appellant does not reveal these alleged stressors, together with dates and places, there is no way to corroborate, or even attempt to corroborate, the information.

While Drs. Crummie and Fuller diagnosed PTSD, the BVA is not bound to accept the two opinions. *See Wilson, supra.* The two doctors made their diagnoses almost 20 years following appellant's separation from service. They necessarily relied on history as related by appellant.

Their diagnoses can be no better than the facts alleged by appellant. Specifically, appellant has related the accounts of *two* mortar attacks which were not life-threatening. However, Dr. Fuller based his diagnosis of PTSD, in part, on appellant's narrative of having been caught in mortar fire *numerous times.* Based on this discrepancy in the appellant's narratives, the Board's skepticism of the doctors' diagnoses, which were based on appellant's narratives, is justified.

### III.  CONCLUSION

The decision of the Board is AFFIRMED.