Jasper BOGGS, Jr., Appellant,

v.

Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.

No. 96–1624.

United States Court of Veterans Appeals.

July 21, 1998.

Kenneth M. Carpenter, Topeka, KS, was on the brief for appellant.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and John D. McNamee, Washington, DC, were on the pleadings for appellee.

Before NEBEKER, Chief Judge, and FARLEY and IVERS, Judges.

FARLEY, Judge:

This is an appeal from an October 29, 1996, decision of the Board of Veterans' Appeals (BVA or Board) which denied the veteran's claim for compensation pursuant to 38 U.S.C. § 1151 (formerly 38 U.S.C. § 351) for residuals of treatment with LSD–25 in 1967 by VA. This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will affirm the Board's October 29, 1996, decision.

## I. BACKGROUND

The veteran served on active duty in the U.S. Army from May 1953 to April 1955. *See* R. at 2, 30–31, 36. Neither his preinduction examination nor his separation examination noted any psychiatric disability or abnormality. R. at 30–31, 36.

The veteran was admitted to the VA hospital in Topeka, Kansas, in December 1963, and again in March 1964. R. at 45–46, 48–49. His diagnoses were a duodenal ulcer and anxiety reaction. *Id.* He left the hospital on both occasions against medical advice. *Id.* In May 1964, the regional office (RO) denied the veteran's claim for service connection for a duodenal ulcer and anxiety reaction. R. at 51. His claim was denied because, inter alia, it was determined that his disability was due to his own misconduct, i.e. "Acute and Chronic Alcoholism." *Id.; see also* R. at 42 (September 1962 diagnosis of acute and chronic alcoholism).

The veteran was admitted to the Topeka, Kansas, VA hospital in March 1966. R. at 53–58. His diagnoses included "reactive depression with severe anxiety, mild hysterical features[,] and excessive use of denial" and "borderline inadequate personality of dull normal intelligence level." R. at 58. In October 1967, he consented to participation in an investigational study of the use of the drug LSD–25. R. at 63, 72. He was given his first LSD treatment on October 10, 1967. R. at 63, 66. No further LSD treatments are noted in the veteran's medical records. He was discharged against medical advice after one LSD session. R. at 74.

The veteran was examined by VA for disability evaluation in January 1969. R. at 79–86. He was diagnosed with, inter alia, chronic severe anxiety reaction. R. at 84. The examination report does not mention the veteran's prior LSD treatment. R. at 79–86. During a September 1969 VA examination, he was diagnosed with "schizophrenic reaction (by records)"; there was again no mention of the LSD treatment. R. at 88–94. A May 1969 vocational rehabilitation evaluation conducted at the request of the county welfare department concluded that the veteran "offer[ed] poor potential for any vocational rehabilitation training program geared to preparing him for self-supporting functioning." R. at 96–97. The veteran was admitted to the Topeka VA hospital again in 1972, 1974, 1975, and 1976. R. at 99–100, 103–04, 112, 115–16. His diagnoses included "adult situational reaction, associated severe anxiety"; anxiety neurosis; and chronic anxiety reaction. *Id.* None of his hospital records from those admissions mention the veteran's previous LSD treatment. *Id.* A July 1976 BVA decision denied the veteran's claim for service connection for anxiety reaction and a duodenal ulcer. R. at 124–30. At that time, the veteran claimed that he had incurred a nervous condition and a stomach disorder as a result of his military service. R. at 125. He did not claim that either of these conditions were related to subsequent LSD treatment.

In April 1981, the veteran was diagnosed with "Organic brain syndrome—Temporal lobe disorder—? probably cerebral cortical atrophy." R. at 136. A June 1981 letter from the Assistant Chief of the VA Mental Hygiene Clinic stated that the veteran was "disabled for any employment" at that time and that he "may remain incapacitated for employment indefinitely." R. at 139.

In May 1983, the veteran submitted a claim for benefits for residuals of LSD–25 treatment. R. at 141–44. He claimed that

he was unable to work as a result of his LSD treatment. *Id.* The veteran's medical records were reviewed by Dr. Queeny Poulose, a staff psychiatrist at a VA medical center in Kansas. R. at 148–51. Dr. Poulose concluded that the LSD–25 treatment the veteran received did not cause or aggravate his existing psychiatric problem and that his unemployability had no relation to his LSD–25 treatment. R. at 151. The RO issued a rating decision denying the veteran's claim on September 29, 1983. R. at 154–55.

The veteran appealed that decision. R. at 162. In support of his appeal, the veteran's service representative, the Veterans of Foreign Wars of the United States (VFW), submitted an information sheet on the effects of LSD. R. at 157–59. The veteran testified at a hearing before the rating board in February 1984. R. at 165–71. He described his first LSD treatment and testified that he had told the doctors that he did not want to continue the program. R. at 166–67. He stated that the doctors never told him that they were giving him LSD after that, but that he believed that they secretly did. R. at 167. The VFW also submitted an informal hearing presentation, wherein Mr. Gordon Thorson of VFW testified that Dr. Turner Camp, a VFW medical consultant, had concluded that Mr. Boggs was not a good candidate for LSD treatment and that he should never have been treated with LSD. R. at 180.

In a January 1985 letter, Dr. Henry D. Abraham related that he had reviewed the veteran's medical records and offered a clinical summary of his condition. R. at 183–86. Dr. Abraham concluded the following:

> The progression of neuropsychiatric disorder in this medical record from anxiety and depression related to alcohol abuse to organic brain syndrome, temporal lobe disorder, and schizophrenia following exposure to LSD is strongly suggestive of a post-LSD syndrome. Two kinds of disorders are likely to follow from the use of hallucinogenic drugs such as lysergic acid diethylamide (LSD), namely, chronic visual disturbances (flashbacks), and chronic psychotic disorders of schizophreniform type.

This medical record implies that Mr. Boggs is suffering from both.

. . .

> The diagnosis of post-LSD psychotic and perceptual disorder in this patient, of course, would turn on a careful neuropsychiatric evaluation, but there is enough evidence in the record to make the informed clinician extremely suspicious. Alternative explanations are possible, and can be investigated with appropriate testing, including a complete medical history, physical examination, mental status examination, battery of psychiatric tests, EEG sleep and walking with NP electrodes, CT scan, and lab data including tests of hepatic function.

R. at 186. In a February 13, 1985, decision, the Board affirmed the denial of the veteran's claim. R. at 188–94. The Board explained that 38 U.S.C. § 351 (the then-applicable statute), which provides for compensation for an increase in disability due to injury suffered as a result of VA treatment, requires first a showing that the veteran suffers from a disability resulting from some act or omission of VA and then it must be shown that the disability resulted from either indicated fault or accident on the part of VA. R. at 192. The Board concluded that the veteran did not suffer from any disability as a result of the administration of LSD–25. R. at 193. The Board therefore did not address whether the administration of the LSD–25 involved any fault or accident on the part of VA. *Id.*

In a letter dated February 14, 1985, Dr. R.E. Schulman reported that "[a]s far as [he could] tell from [his] examination and what the patient reports, [the veteran] was too 'primitive' at the outset to be able to benefit from LSD treatment." R. at 196. Dr. Schulman did not offer an opinion as to whether the veteran's current condition was caused or aggravated by the LSD treatment. *See* R. at 196–99. The veteran was examined by Dr. Barbara D. Taylor on March 20, 1985. R. at 201–03. Dr. Taylor's impression was that the veteran suffered from headaches and episodes of visual problems "which may be some sort of seizure disorder." *Id.* She noted that the veteran attributed his condi-

tion to his LSD exposure, but offered no opinion as to whether this was the case. *Id.* Dr. Henry Abraham provided another statement assessing the veteran's condition in May 1985. R. at 205–11. Dr. Abraham reported that in addition to the veteran's medical records, he reviewed a paper titled "Lysergic Acid Diethylamide as a Variable in Hospital Treatment of Alcoholism," published in a medical journal in 1970. *Id.* Dr. Abraham explained that this paper "appear[ed] to describe the methodology of the LSD program that was in place around the time Mr. Boggs was administered LSD." *Id.* Dr. Abraham noted that despite the 1969 diagnosis of schizophrenia, there was little evidence to suggest that the veteran actually suffered from schizophrenia. R. at 208. He further noted that there was, on the other hand, "a wealth of evidence to suggest that Mr. Boggs has been suffering from a progressive disorder of his central nervous system which in all likelihood is explained by his exposure to LSD in 1967." *Id.* Based upon the receipt of all of this evidence, the RO issued a confirmed rating decision on June 24, 1985, confirming the denial of the veteran's claim. R. at 228.

In May 1986, the Chairman of the BVA requested that the veteran's claim be reviewed by a physician with expertise in the therapeutic use of LSD for an opinion as to whether Mr. Boggs' current condition was related to his LSD therapy. R. at 249. In June 1986, Dr. Stewart L. Baker, Associate Director of the Alcohol and Drug Division of VA, requested an opinion from Dr. Harold E. Booker, Director of Neurology Service, on whether the veteran's CAT scan and EEG findings confirm a diagnosis of temporal lobe epilepsy and if the temporal lobe epilepsy is the result of LSD treatment. R. at 251. Dr. Booker concluded that there was no clinical evidence to suggest that the veteran suffered from epilepsy, and therefore, the question of whether it was caused by LSD was moot. R. at 252. Dr. Paul Errera, Director of VA Mental Health and Behavioral Sciences, responded to the Chairman of the BVA's request for an opinion in June 1986. R. at 255–56. It was the opinion of that office that (i) there was no causal relationship between the veteran's current disabilities and his LSD treatment; (ii) there was no evidence that the veteran's ability to work was impaired by the LSD treatment; (iii) the veteran did not suffer from epilepsy; and (iv) the veteran did suffer from chronic atypical anxiety disorder, with a history of autonomic activity, apprehensive expectation, depression, symptomatic alcohol abuse, and marginal adjustment to social and occupational requirements. *Id.*

The Board issued another decision denying the veteran's claim on September 23, 1986. R. at 258–67. The Board had concluded that:

1. The prior decision of the [BVA] in February 1985[was] final; and a new factual basis for reopening the claim [had] not been presented[; and]

2. The criteria for an award of benefits pursuant to the provisions of 38 U.S.C. § 351 for an additional disability as a result of the administration of LSD at a[VA] medical facility [had] not been met.

R. at 267 (citations omitted). Sometime thereafter, the veteran submitted letters from his wife and two children in support of his claim. R. at 269. The index of the Record on Appeal prepared by the Secretary indicates that these letters were received in May 1987. R. at iii.

In December 1993, the veteran sought to reopen his claim for benefits for residuals of LSD treatment. R. at 278. He was given a mental disorders examination by VA on April 11, 1994. R. at 283–88. He was diagnosed with: "[p]ost-hallucinogen perception disorder secondary to alleged controlled experimental use of LSD in medical treatment in 1968(sic)." R. at 287. An April 29, 1994, RO decision denied the veteran's claim for residuals of LSD treatment. R. at 290–91. The RO concluded that the new evidence submitted did not show "clinical evidence to suggest that the LSD administration [in October 1967] caused a progressive disorder of the nervous system." R. at 290. The veteran filed a Notice of Disagreement on May 26, 1994. R. at 298.

The veteran and his wife testified at a personal hearing before the RO in October 1994. R. at 343–67. The RO requested an opinion from the Chief of Staff of the Colmery–O'Neil VA Medical Center as to wheth-

er the veteran sustained "additional disability due to VA administration of LSD–25 in 1967 as the result of carelessness, negligence, lack of proper skill, error in judgment, or any similar instance of indicated fault on the part of [VA] ... [or] due to VA administration of LSD–25 in 1967 as the result of accidental, unforseen, untoward residuals of such treatment." R. at 369. In response to that request, Dr. Vincent L. Alvarez reviewed the veteran's C-file and other medical opinions and concluded the following:

I find the evidence to be quite clear that there was no injury sustained by this gentleman due to LSD–25.... It is noted that he did receive one dose of LSD in 1967; however, the LSD did not result in a psychosis.... There are plenty of problems with Mr. Boggs and indeed he does appear to suffer from severe depression and chronic anxiety; however, none of these conditions could be the result of the one dose of LSD. He had disorders of depression and anxiety prior to receiving the LSD.

... In conclusion, I believe that there is no negligence on the part of [VA] and there is no documentable disability caused by the administration of LSD–25 in 1967. It should be noted that by 1981 he was showing some possible organic brain damage; again, there is no empirical evidence that LSD causes organic brain damage and there is plenty of evidence that alcohol abuse, which he has practiced for many years, could have caused this problem. Sleep apnea that was diagnosed has not been shown to be related to anything other than anatomical abnormalities and could not be seen as a sequela of the LSD.

R. at 371–72. The hearing officer issued his decision on January 27, 1995, denying the veteran's claim for benefits pursuant to 38 U.S.C. § 1151 (the current version of 38 U.S.C. § 351) for residuals of LSD treatment. R. at 376–78.

A June 1995 electrocardiogram report included the following impression: "This tracing shows fast activity over anterior regions, spreading posteriorly. This finding might be due to pharmacological effect of medication." R. at 448. The veteran continued to submit various letters, statements, and duplicate medical records (*see* R. at 390–440, 452–55, 484–89, 492–93, 500–05), and testified at another personal hearing in November 1995 (R. at 465–70).

The Board issued its decision on October 29, 1996. R. at 1–18. The Board noted initially that the previous denials of the veteran's claim were based upon 38 C.F.R. § 3.358(C)(3), the regulation which provided at the time that benefits pursuant to 38 U.S.C. § 1151 could be awarded only where some fault on the part of VA has been demonstrated. Because that regulation was invalidated by this Court in 1991 (*Gardner v. Derwinski*, 1 Vet.App. 584 (1991)) and that decision was affirmed by the Supreme Court in 1994 (*Brown v. Gardner*, 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462), the Board determined that a *de novo* review of the veteran's claim was required. The Board then concluded that:

As the veteran did not suffer injury or aggravation of an injury as a result of hospitalization, medical or surgical treatment at a VA facility, compensation for residuals of treatment with LSD–25 in 1967 under the provisions of 38 U.S.C. § 1151[was] not warranted.

R. at 3. In the "REASONS AND BASES FOR FINDINGS AND CONCLUSION" section of the BVA decision on appeal, the Board stated, in pertinent part:

In this case, the veteran is claiming entitlement to benefits under the theory that treatment with LSD in 1967 resulted in his current psychiatric disability. The evidence lending support to his claim includes a January 1985, opinion from Henry D. Abraham, M.D., who opined that the appellant's medical record implied a diagnosis of a post-LSD psychotic and perceptual disorder. Further, in May 1985, Dr. Abraham opined that there was a "wealth of evidence to suggest" that the appellant had been suffering from a progressive central nervous system disorder which in all likelihood was explained by his exposure to LSD. Also supporting the veteran's contention is a February 1985 opinion by R.E. Schulman, Ph.D., who offered that appellant was "too primitive" to have benefited

from LSD treatment. In April 1994, a VA psychiatrist concluded that the appellant had a post-hallucinogen perception disorder secondary to alleged LSD use. Finally, the veteran has offered medical literature from several sources, and both the appellant and his spouse have provided sworn testimony in support of the claim on various occasions.

The evidence against the appellant's claim includes an August 1983 opinion by a staff psychiatrist who opined that the veteran had a severe anxiety disorder, a long chaotic social adjustment, pan-anxiety, a passive-dependent relationship with his spouse, and severe somatization which was suggestive of a possible personality disorder and a generalized anxiety disorder. This psychiatrist opined further that the appellant's use of LSD in 1967 did not cause the appellant's injury, or aggravate his preexisting psychiatric disorder. The evidence against the veteran's claim also includes a June 1986 opinion of the director of the VA Neurology Service who opined that because the appellant did not show temporal lobe epilepsy the question whether temporal lobe epilepsy was the result of LSD use was moot.

Additionally the evidence against the veteran includes a June 1986 opinion from the director of the VA Mental Health and Behavioral Sciences Service who offered that ... there was no clinical or other evidence to suggest that LSD administration caused a decrease in the appellant's ability to hold a job, or a progressive disorder of the nervous system. Finally, the evidence weighing contrary to an allowance of the appellant's claim includes an opinion of a Chief of Staff of a VA Medical Center who found, after reviewing the veteran's claims file, that the evidence was quite clear that he sustained no injury as the result of LSD use.

After carefully reviewing the above opinions, as well as all of the evidence of record, the Board concludes that the preponderance of the evidence is against granting benefits under the provisions of 38 U.S.C.A. § 1151 due to the administration of LSD treatment in 1967. In this regard, the Board ... initially finds that

Dr. Shulmann [sic] did not offer an opinion as to whether the veteran incurred or aggravated a disability while receiving VA care in 1967. While Dr. Schulman questioned the use of LSD in the veteran's case, he did not offer a relevant opinion as to whether the appellant incurred or aggravated a disorder in 1967. Hence, this opinion cannot be a basis upon which to grant benefits.

With respect to the opinion provided by the VA examiner in April 1994, the Board initially notes that in *West v. Brown*, 7 Vet.App. 70 (1994), the United States Court of Veterans Appeals held that an examination which relies on a history which [is] inaccurate is an examination which is inadequate for rating purposes. In light of this holding, the Board finds it very significant that while the claims files are chock full of evidence showing that the veteran had a chronic, severe anxiety reaction with hysterical features many years prior to 1967, the 1994 VA examiner failed to make a single comment as to any psychiatric disorder or psychiatric complaints preexisting the appellant's 1967 treatment. The Board also finds notable the reference to "alleged" LSD use in "1968," when the record is clear that the veteran actually was prescribed LSD after providing consent to VA to use this investigational therapy, and that this treatment was provided on a single occasion in 1967 *not 1968*. Hence, the only conclusion possible is that the examiner who conducted the 1994 VA study did so without reviewing all of the evidence of record, and reached diagnostic conclusions based upon an inaccurate history provided by the veteran himself. As the Board is not bound to accept medical opinions which are based on history supplied by the veteran where that history is unsupported by the medical evidence, *Black v. Brown*, 5 Vet.App. 177 (1993); *Swann v. Brown*, 5 Vet.App. 229 (1993); *Reonal v. Brown*, 5 Vet.App. 458 (1993); *Guimond v. Brown*, 6 Vet.App. 69 (1993), the Board finds that the 1994 VA opinion has no probative value as to the question whether the veteran incurred or aggravat-

ed a disorder in 1967 as the result of VA medical treatment.

The only remaining evidence which supports the appellant's position is that provided by Dr. Abraham in May 1985. In this regard, Dr. Abraham concluded that there was a "wealth of evidence to suggest" that the veteran was suffering from a progressive disorder of central nervous system which was explainable by noting his exposure to LSD in 1967. Dr. Abraham further opined that the veteran had a chronic visual disorder which exacerbated the appellant's preexisting anxiety, depression, and feelings of emotional inadequacy; and that the gradual evolution to temporal epilepsy was not uncommon in LSD users.

In looking at this opinion, the Board finds it very significant that there is no competent evidence that the veteran currently even has temporal lobe epilepsy. Indeed, in June 1986, the VA Director of Neurology Service specifically opined that the veteran did not have temporal lobe epilepsy, and as such, the relationship between LSD use and epilepsy was moot. In light of this opinion the Board finds that the preponderance of the evidence shows that the appellant did not incur or aggravate a seizure disorder as the result of VA medical treatment in 1967.

With respect to the remainder of Dr. Abraham's opinion we find that the probative value of his conclusion is surpassed by the more probative opinions proffered in June 1986 by the Director of the VA Mental Health and Behavioral Sciences Service, and in November 1994 by the Chief of Staff of the Wichita, Kansas VA Medical Center. In this regard, the Board first observes that it is clear from both of these latter opinions that all of the evidence of record was available to these examiners. While it appears that Dr. Abraham may have had substantially all of the evidence of record at some point in 1985, it is clear that he did not have all of the evidence available to examiners in 1986 and 1994. This difference is crucial as the question before the Board is whether the veteran is entitled to compensation for residuals of 1967 VA medical treatment which are *currently manifest. Cf. Rabideau v. Derwin-*

*ski,* 2 Vet.App. 141, 144 (1992); *Brammer v. Derwinski,* 3 Vet.App. 223, 225 (1992).

Second, it is highly probative that in 1986, there was no clinical or other evidence to suggest that LSD administration in 1967 caused a decreased ability to hold a job, or a progressive disorder of the central nervous system. This opinion was reinforced and expanded upon in 1994, when the Chief of Staff concluded there was no evidence of any injury sustained due to the single dose treatment of LSD, and that the appellant's then current disability, that is, severe depression and chronic anxiety could not be related to the single dose of LSD treatment.

In light of all of the foregoing, the Board finds that the veteran consented to the treatment with LSD knowing that risks were involved. Further, the record shows that the appellant entered the VA medical system in 1967 with a preexisting disability, and that any preexisting disability was not aggravated following the receipt of LSD treatment. The Board further finds that the preponderance of the evidence shows that the veteran did not incur a superimposed disability as the result of VA medical treatment in 1967. Accordingly, the benefit sought on appeal must be denied.

In reaching this decision the Board considered the medical texts proffered on the veteran's behalf, but the probative value of these documents is outweighed by the opinions offered by those who have actually reviewed all of the evidence of record. The Board also considered the testimony presented by the veteran and his wife, and the lay statements presented on his behalf which offer the opinion that the appellant has a disorder which was incurred or aggravated while receiving VA medical treatment in 1967. These opinions, however, are offered by lay personnel who are not shown to be trained in the field of psychiatry. As such, these opinions do not constitute competent evidence. *Espiritu v. Derwinski,* 2 Vet.App. 492 (1992).

The Board further considered the EEG reports which suggested that some changes "might be" due to the pharmaco-

logical effects of medication. These test results, however, do not opine that the appellant has a disorder which is the result of or was aggravated by LSD treatment in 1967. As such, they are of limited probative value.

R. at 14–18. After this extensive review of all of the evidence of record, both favorable and unfavorable to the veteran, the Board found that the preponderance of the evidence was against the veteran's claim. *See Owens v. Brown,* 7 Vet.App. 429, 433 (1995); *Hatlestad v. Derwinski,* 1 Vet.App. 164, 169–70 (1991). This appeal followed.

## II. JURISDICTION OF THE BOARD

### A. New or Reopened Claim

■ Section 7104(b) of title 38, U.S.Code, provides: "Except as provided in section 5108 of this title, when a claim is disallowed by the Board, the claim may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." Section 5108 of title 38 states that "[i]f new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim." 38 U.S.C. § 5108; *see also* 38 U.S.C. § 7104(b); *Spencer v. Brown,* 4 Vet.App. 283, 286–87 (1993), *aff'd,* 17 F.3d 368 (Fed.Cir.1994); *Thompson v. Derwinski,* 1 Vet.App. 251, 253 (1991). Therefore, once a BVA decision becomes final under section 7104(b), "the Board does not have jurisdiction to consider [the previously adjudicated claim] unless new and material evidence is presented, and before the Board may reopen such a claim, it must so find." *Barnett v. Brown,* 83 F.3d 1380, 1383 (Fed.Cir.1996); *Butler v. Brown,* 9 Vet.App. 167, 171 (1996) (When new and material evidence has not been submitted in a previously disallowed claim "[f]urther analysis ... is neither required, nor permitted."). The issue of whether evidence is new and material is a conclusion of law which the Court reviews de novo. *Beausoleil v. Brown,* 8 Vet.App. 459, 463 (1996).

■ In *Spencer,* the Court held that "section 7104(b) does not preclude de novo adjudication of a claim, on essentially the same facts as a previously and finally denied claim, where an intervening change in law or regulation has created a new basis of entitlement to a benefit." 4 Vet.App. at 289; *but see Routen v. West,* 142 F.3d 1434 (Fed.Cir.1998) (change in evidentiary standard applicable to a claim is neither "new and material evidence" nor an "intervening change in law" creating a new basis for entitlement). Therefore, where a new basis of entitlement has been established by a change in law, new and material evidence is not required because the claim is a new claim, rather than a reopened one. *Id.*

■ In the BVA decision here on appeal, the Board concluded that because *Gardner, supra,* invalidated a regulation applicable to the veteran's claim, a de novo review of the claim was required. R. at 2. Citing *Spencer, supra,* the Board therefore presumed that the new and material evidence requirement of section 5108 was not applicable to this claim. R. at 2. The Court disagrees. The Federal Circuit's decision in *Routen* makes clear that not every "liberalizing" change in the law establishes a new basis for entitlement. *Routen, supra.* The invalidation of 38 C.F.R. § 3.358(c)(3) removed the requirement that, in addition to first showing that he or she suffers from a disability resulting from some act or omission of VA, a veteran must demonstrate some fault on the part of VA to establish entitlement to benefits pursuant to section 1151. *See Gardner, supra.* However, all of the previous adjudications of this veteran's claim resulted in denials not because of the absence of fault but because the veteran had not shown that he suffered any disability as a result of the administration of LSD–25. *See, e.g.,* R. at 3, 193. Although the elimination of the fault requirement would ultimately have made the veteran's claim easier to prove, he had yet to meet his initial burden of establishing a disability resulting from the acts of VA. Thus, the now-invalidated regulation had never been applied to the veteran's claim. Under these circumstances, it cannot be said that the change in law brought about by the Court's decision in *Gardner, supra,* amounted to a new basis for entitlement to benefits. Accordingly, the Court holds that the Board

erred in its presumption that new and material evidence was not required to reopen and to consider the veteran's claim.

## B. New and Material Evidence

When a claimant seeks to reopen a previously and finally denied claim, the Board is required to conduct a two-step analysis to determine whether new and material evidence has been presented. *Evans v. Brown,* 9 Vet.App. 273, 282–83 (1996); *Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991). First, it must be determined if the evidence presented since the last final disallowance of the claim is "new and material." *Evans,* 9 Vet.App. at 283. Second, the Board must reopen the claim and "review all of the evidence of record to determine the outcome of the claim on the merits." *Id.* Evidence is "new and material" if: (i) it was not of record at the time of the last final disallowance of the claim and is not merely cumulative of evidence of record; (ii) it is probative of the issue at hand; and, if it is "new" and "probative," (iii) it is reasonably likely to change the outcome when viewed in light of all the evidence of record. *Id.*

The last final disallowance of the veteran's claim was the Board's September 1986 decision. R. at 258–67. The evidence submitted since that decision consists of, inter alia, an April 1994 VA medical examination which concluded that the veteran suffered from "[p]ost-hallucinogen perception disorder secondary to alleged controlled experimental use of LSD in medical treatment in 1968(sic)." R. at 287. This evidence is new, probative of the issue at hand, and reasonably likely to change the outcome of the merits. *See Evans, supra.* The Court therefore concludes that, despite the Board's failure to address the issue, new and material evidence has been submitted to reopen the veteran's claim for residuals of LSD treatment, and the Board did have jurisdiction to review the veteran's claim on the merits de novo. *See Barnett* and *Evans* both *supra.* Thus, the Board's error in assuming, pursuant to *Spencer, supra,* that this was a new, rather than a reopened claim was harmless. *See* 38 U.S.C. § 7261(b) ("[T]he Court shall take due account of the rule of prejudicial error.").

## III. APPLICABLE VERSION OF 38 U.S.C. § 1151

At the time the veteran sought to reopen his claim for residuals of LSD treatment pursuant to section 1151, that statute provided, in pertinent part:

> Where any veteran shall have suffered an injury, or aggravation of an injury, as the result of hospitalization, medical or surgical treatment ... not the result of the veteran's own willful misconduct, and such injury or aggravation results in additional disability to or death of such veteran, disability or death compensation ... shall be awarded in the same manner as if such disability, aggravation, or death were service-connected.

38 U.S.C. § 1151 (1991). When the veteran filed his original claim for residuals of LSD treatment in 1983 (*see* R. at 140–41), section 1151 was interpreted as requiring a showing of fault on the part of VA in the administration of the treatment causing the disability. *See* R. at 192; *see also* 38 C.F.R. § 3.358(C)(3) (1990); *Gardner,* 1 Vet.App. 584. As the Board noted in its October 1996 decision, however, this Court had subsequently found that section 3.358(c)(3) was "unlawful as exceeding the authority of the Secretary and in violation of the statutory rights granted to veterans by Congress under section 1151." 1 Vet.App. at 588, *aff'd sub nom,* 5 F.3d 1456 (Fed.Cir.1993), *aff'd,* 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994). Accordingly, the Board considered the veteran's claim and rendered its decision without regard to fault of VA. The Court notes that Congress has amended section 1151 to reincorporate the fault requirement. 38 U.S.C. § 1151(a)(1); Pub.L. 104–21, Title IV, § 422(a), Sept. 26, 1996, 110 Stat. 2926. Congress specifically provided, however, that the amendments to section 1151 would be applicable to all claims filed on *or after* October 7, 1997 (*id.*); therefore, the new statute could not be applicable to the appellant's claim. *Compare Karnas v. Derwinski,* 1 Vet. App. 308, 313 (1991) (where the law or regulation changes while a claim is pending "the

version most favorable to the appellant ... will apply *unless Congress provided otherwise.*") Accordingly, the Court finds that the Board applied the correct version of the law applicable to this claim.

## IV. ANALYSIS

 The BVA's determination whether or not service connection is appropriate in a particular case is a finding of fact. *Irby v. Brown,* 6 Vet.App. 132, 135 (1994); *Swann,* 5 Vet.App. at 232; *Wood v. Derwinski,* 1 Vet. App. 190, 192 (1991). The Court must affirm findings of fact made by the Board unless they are found to be "clearly erroneous." 38 U.S.C. § 7261(a)(4). "[T]his Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA ... we cannot overturn them." *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990). In addition, as set forth in 38 U.S.C. § 7104(d)(1), the BVA is required to adequately provide reasons or bases for its findings and conclusions·on all material issues of fact or law. *See Gilbert,* 1 Vet.App. at 56–57.

The appellant argues on appeal that the Board's reasons and bases for denying his claim were insufficient and that, "[w]hen the evidence in favor of the veteran is given proper weight, the preponderance of the evidence supports the veteran's claim." Specifically, the appellant contends that the Board improperly discounted the opinions of Dr. Abraham and Dr. Schulman, an abnormal EEG report, and the 1994 VA examination.

 With respect to Dr. Abraham's 1985 opinions, which support the veteran's claim, the Board found that their probative value was outweighed by the 1986 and 1994 medical opinions which repudiated the veteran's theory. In drawing this conclusion, the Board noted that the 1986 and 1994 opinions were more current than Dr. Abraham's opinions and that the physicians in 1986 and 1994 had more evidence available to them in rendering their opinions than Dr. Abraham could possibly have had. R. at 17. The appellant argues that the Board's conclusion was erroneous because essentially no new evidence was added to the record between 1985 and 1994, and therefore, Dr. Abraham did have essentially the same evidence available to him. However, as the Board noted and the record verifies, additional evidence *was* available in 1986 and 1994. In rendering his opinion in June 1986, Dr. Errera had the benefit of all of the evidence available to Dr. Abraham, plus Dr. Abraham's report, CAT scan and EEG test results, and an opinion from Dr. Harold E. Booker regarding those results. *See* R. at 251–52. In fact, it appears the opinion was requested from Dr. Booker in an attempt to determine whether Dr. Abraham's opinion that the veteran suffered from a "progressive disorder of his central nervous system," which was rendered without examining the veteran, could be verified by clinical evidence. *See* R. at 251. In 1994, Dr. Alvarez had all of this information available to him, as well as the April 1994 VA examination results (R. at 283–88), and an additional EEG report (R. at 280). Dr. Alvarez' report included a notation that "there is no empirical evidence that LSD causes organic brain damage." R. at 371. The Court finds that there is a plausible basis in the record supporting the Board's conclusion that the more recent medical opinions were of greater probative value. "It is not error for the BVA to favor the opinion of one competent medical expert over that of another when the Board gives an adequate statement of reasons and bases." *Owens,* 7 Vet. App. at 433.

 The appellant also argues that the Board's reasons for dismissing Dr. Schulman's 1985 opinion and an abnormal EEG report were insufficient. The Board noted, accurately, that neither of those opinions related the administration of LSD to the veteran's current condition. R. at 15–16, 18. Although the appellant is correct that the rating specialist must consider medical reports in light of the claimant's entire history (38 C.F.R. § 4.2 (1997)), the Court agrees with the Board's assessment that those records were too vague to provide probative evidence in support of the veteran's claim and is satisfied with the statement of reasons or bases provided by the Board.

Finally, the appellant argues that the Board misinterpreted and misapplied the

Court's decision in *West v. Brown* in its discussion of the April 1994 VA examination. In *West,* the Court held that an examination which relies on an inaccurate history is inadequate for rating purposes. 7 Vet.App. at 78. The *West* Court concluded that because the examination was insufficient, "the record [was] inadequate and thus frustrate[d] effective judicial review." *Id.* The claim was therefore remanded for a new examination. The appellant argues here that, pursuant to *West,* a remand is required if, as the Board noted, the examination was insufficient. The Court declines to adopt the universal rule proffered by the appellant. Although the examination appeared to have been based upon an inaccurate or incomplete history, the Court finds that the record, as a whole, is still sufficient for judicial review. The record is replete with additional medical records and opinions, including a November 1994 medical opinion rendered with the benefit of the April 1994 examination report. *See* R. at 371–72. Moreover, although the appellant took the Board's language where it stated that the VA examination "has no probative value" as a mindless application of *West, supra,* it is apparent that the Board's opinion was based on far more. *See* R. at 16. The Board's "dismissal" of that examination was based upon a reasoned assessment of the probative value of that evidence after having compared it with the other medical evidence in the record. It is the Board that must assess the credibility and probative value of evidence, and, provided that it offers an adequate statement of reasons or bases, the Board may favor one medical opinion over another. *Owens,* 7 Vet.App. at 433. The Court finds that the Board has provided sufficient reasons or bases for its assessment of the weight and credibility of the April 1994 examination.

## V. CONCLUSION

The Board considered and discussed all of the pertinent medical records and opinions, and provided plausible bases for all of its findings, including its evaluation of the various medical opinions favoring the veteran's claim, which it found to have been rebutted by other competent medical opinions. Thus, the Court finds that there is a plausible basis

in the record for the Board's conclusion that the veteran did not suffer injury or aggravation of an injury as the result of LSD–25 treatment administered by VA in 1967. *Gilbert, supra.* The Court is also satisfied that the BVA decision meets the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1). *See Gilbert, supra.* The Court therefore holds that the appellant has not demonstrated that the Board committed either factual or legal error which would warrant reversal or remand. *Gilbert, supra; see also Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Danville Plywood Corp. v. United States,* 899 F.2d 3 (Fed.Cir.1990). Accordingly, the October 29, 1996, decision of the Board of Veterans' Appeals is AFFIRMED.