**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 00-340

NICHOLAS J. WEBB,                                                  APPELLANT,

    v.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS,                                     APPELLEE.

Before FARLEY, STEINBERG, and GREENE, *Judges*.

## O R D E R

On March 6, 2001, the Court issued an order that vacated and remanded the December 6, 1999, decision of the Board of Veterans' Appeals (Board or BVA), pursuant to the Veterans Claims Assistance Act (VCAA) of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000). That decision denied the appellant's claim for compensation under the provisions of 38 U.S.C. § 1151 for residuals of a cerebral hemorrhage. On March 14, 2001, the appellant filed a motion for reconsideration and for a panel decision.

On consideration of the foregoing and the record, it is

ORDERED, by the single judge, that the motion for reconsideration is denied. It is further

ORDERED, by the panel, that the motion for a panel decision is denied.

DATED:     August 15, 2001                PER CURIAM.

STEINBERG, *Judge*, dissenting: I agree that this case should be remanded for the Board of Veterans' Appeals (Board or BVA) to consider the potentially applicable provisions of the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (VCAA).[1] I voted in favor of a panel decision, however, because I believe that the Court should also address

---

[1] *See Holliday v. Principi,* 14 Vet.App. 280, 290 (holding that, in view of "the absence of [Department of Veterans Affairs (VA)] implementing regulations, and . . . [in view of] concerns of fundamental fairness and fair process, the Court must avoid cutting off an appellant's rights under the [Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (VCAA),] by prematurely injecting itself into the VA adjudication process and making determinations on issues that were not addressed by VA in the first instance" and that, therefore, "at least at this time . . . this Court may not determine in the first instance the applicability of the VCAA" to an appellant's claims), *mot. for recons. denied*, 14 Vet.App. 327 (per curiam order), *mot. for full Court review denied*, 15 Vet.App. 21 (2001) (en banc order).

certain of the appellant's assertions of error in the December 6, 1999, Board decision that are not predicated on the potential applicability of the VCAA.

The appellant's claim is that residuals of a cerebral hemorrhage in March 1994 occurred as a result of a failure by a Department of Veterans Affairs (VA) emergency room physician to render an accurate diagnosis when the appellant first presented himself for treatment and that he is thereby entitled to compensation benefits under 38 U.S.C. § 1151. The Board found that the delay in making the correct diagnosis should not have occurred. Record (R.) at 7. The question before the Board was whether that delay produced any "additional disability" within the meaning of section 1151.

The appellant has made several forceful and colorable arguments in his brief that the Board's decision contained errors that are capable of repetition on remand.[2] The Secretary argues in his brief that readjudication is necessary in light of the enactment of the VCAA and that such a remand renders moot the consideration of any other purported or perceived errors in the BVA decision. Brief (Br.) at 10, 11. The appellant, in his reply brief, again argues that the Court should address BVA errors not predicated on the applicability of the VCAA. Reply Br. at 5.

As a preliminary matter, I agree with the appellant's position in his reply brief that, in a case where enactment of the VCAA necessitates remand, all other assertions of Board error are **not** rendered moot. This Court has both the jurisdiction and the discretion to address **all** assertions of Board adjudication error, including errors asserted as alternative grounds for remand. *See Mahl v. Principi*, 15 Vet.App. 37, 47 (2001) (Steinberg, J., dissenting) ("in a case such as this one where a claim is remanded pursuant to *Karnas* [*v. Derwinski*, 1 Vet.App. 308 (1991),] the issue whether the appellant could be entitled to the benefit sought on appeal under the law as it existed prior to the enactment of the VCAA is still very much in contention because *Karnas* requires consideration of both old and new law, with the ultimate application of the law that is more favorable to the claimant"); *cf. Best v. Principi*, 15 Vet.App. 18, 20 (2001) (per curiam order) (Court has, but often refrains from exercising either sua sponte or at appellant's request, its discretion to address all allegations of error by Board when it is determined that VCAA necessitates remand).

The appellant's most persuasive assignments of error pertain to the sufficiency and reliability of an August 1999 report of a VA medical examiner, Dr. Traian Cojocaru (R. at 197), and the weight given by the BVA to that report. In this regard, the Board is required by 38 U.S.C. § 7104(d)(1) to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). To comply with this requirement, the Board must analyze the credibility and

---

[2] *See Mahl v. Principi*, 15 Vet.App. 37, 41 ( 2001) (Steinberg, J., dissenting) (if Court were to issue decision holding that certain errors had occurred in Board adjudication, possibility that Board would, on remand, repeat those same errors would be markedly reduced).

probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the veteran. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gabrielson v. Brown*, 7 Vet.App. 36, 39-40 (1994); *Gilbert*, *supra*; *see also Boggs v. West*, 11 Vet.App. 334, 344 (1998) ("[i]t is not error for the BVA to favor the opinion of one competent medical expert over that of another when the Board gives an adequate statement of reasons [or] bases" (*quoting Owens v. Brown*, 7 Vet.App. 429, 433 (1995))).

First, the appellant asserts that the Board decision did not sufficiently address the absence of reference in Dr. Cojocaru's report to a January 1998 medical opinion of Dr. Joel Vandersluis (R. at 181), a private neurologist and psychiatrist, which was favorable to the veteran's claim. A medical examination must consider the records of prior medical examinations and treatment in order to assure a fully informed opinion. *See Hampton v. Gober*, 10 Vet.App. 481, 483 (1997); *Schroeder v. Brown*, 6 Vet.App. 220, 225 (1994); *see also Smith (George) v. Brown*, 8 Vet.App. 546, 553 (1996) (en banc) ("[although] the Board is not required to accept the medical authority supporting a claim, it must provide its reasons for rejecting such evidence"); *Caluza*, *Gabrielson*, and *Gilbert*, all *supra*. The veteran stated in a September 1999 letter to the Board that he had mailed a copy of Dr. Vandersluis' January 1998 opinion to the VARO in April 1998, and that, therefore, this medical opinion should have been part of the veteran's claims file that was considered by Dr. Cojocaru more than a year later in August 1999. R. at 201. Dr. Vandersluis' January 1998 report was addressed to the Dayton, Ohio, VA Medical Center. R. at 181. Although the Board decision summarized Dr. Vandersluis' report, it did not address whether his opinion was in the veteran's claims file or otherwise under VA control when Dr. Cojocaru rendered his August 1999 opinion or when the Board requested that opinion. *See Bell v. Derwinski*, 2 Vet.App. 611, 612 (1992); *cf. Lynch v. Gober*, 11 Vet.App. 22, 29 (1997).

This latter point is particularly pertinent because the Board's May 1999 engagement letter to Dr. Cojacoru (R. at 193), may have been biased and therefore defective if the medical opinion of Dr. Vandersluis was of record when the engagement letter was sent. Where a medical examiner renders a judgment without the benefit of a review of the entire medical record and the letter of engagement may bias the judgment of the examiner, the opinion should be held to be without evidentiary value. *See Bielby v. Brown*, 7 Vet.App. 260, 268 (1994). The Board's engagement letter mentioned the August 1997 somewhat unfavorable report of Dr. Kathy Zoerb (who the BVA decision identified as a "VA doctor" (R. at 9)) to the effect that: "The only medical opinion of record indicated that it was impossible to say if there was any more disability due to delayed treatment" (R. at 194; *see also* R. at 166). However, the letter did not refer to Dr. Vandersluis' favorable report. R. at 194. There is also no direction in the Board's engagement letter to Dr. Cojocaru that he should examine all prior medical opinions or that, in making his conclusions, he should comment on any alternative diagnoses present in the record at the time of his review.

Second, the appellant asserts Board error regarding the relative probative value that the Board itself assigned to the different medical opinions of record. As noted above, in assessing the credibility and probative value of all evidence, including medical evidence, the Board must offer an

adequate statement of reasons or bases as to why it favors one medical opinion over another. *See Boggs, supra; see also Caluza, Gabrielson,* and *Gilbert,* all *supra.* The Board addressed all of the medical opinions of record; however, the Board failed to address sufficiently why Dr. Cojocaru's opinion was afforded greater weight than that of Dr. Vandersluis. Dr. Cojocaru's report mentioned the conclusions and opinions of Dr. Zoerb, but did not mention Dr. Vandersluis' conclusions about the veteran's medical condition that tended to support the veteran's claim.[3] R. at 198. The Board decision stated that Dr. Cojocaru's opinion was more probative than Dr. Vandersluis' because it "was based on a review of a record that was more thorough in nature." R. at 7. In this regard, the Board decision did not state clearly whether "more thorough" meant that Dr. Cojocaru's report was more detailed, or whether the claims file was more complete at the time of his review (even though it may have been lacking Dr. Vandersluis' report) than was the claims file available to Dr. Vandersluis. This failing contributes to the inadequacy of the Board's statement of reasons or bases under 38 U.S.C. § 7104(d), as does the Board's failure to explain why the statement in Dr. Zoerb's evaluation that "[w]e feel that the majority of [the appellant's] neurologic defects probably occurred at the time of the acute aneurysm on 3/7/94" (R. at 166) does not suggest that some – i.e., less than a majority – of his neurologic defects occurred after the initial acute aneurysm.

Therefore, I conclude that the appellant has presented certain colorable assertions of error in the Board decision that the Court should address in the context of its adjudication of this appeal. *See Mahl, supra.* Accordingly, I voted for a panel decision, so that the Court would have an opportunity to do so, and I therefore respectfully dissent.

---

[3] Dr. Vandersluis concluded:

On March 9, the patient demonstrated a hemorrhage as well as marked cerebral edema, and edema was also noted intraoperatively. There is evidence that Mr. Webb did progress in disability in the delay between initial presentation on March 7 and diagnosis on March 9. Possible etiologies include further hemorrhage, vasospasm, or cerebral edema. Potential to avoid such progression was available with the initial presentation. Specifically, there is indication that early neurosurgical intervention (within the first 24 hours) significantly improves long term morbidity and mortality. Mr. Webb may have also benefitted from early management of cerebral edema and use of medications to prevent vasospasm.

R. at 183.

4