Citation Nr: 1121861 
Decision Date: 06/06/11 Archive Date: 06/20/11

DOCKET NO. 06-32 818 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in North Little Rock, Arkansas


THE ISSUES

1. Entitlement to service connection for a psychiatric disorder, to include posttraumatic stress disorder (PTSD).

2. Entitlement to service connection for tuberculosis, claimed as a positive tuberculin tine test.

3. Entitlement to service connection for sinusitis.

4. Entitlement to service connection for hypertension. 

5. Entitlement to service connection for tinnitus.

6. Entitlement to service connection for bilateral hearing loss.

7. Entitlement to service connection for a vision disability.



REPRESENTATION

Veteran represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

M. Donohue, Associate Counsel


INTRODUCTION

The Veteran served on active duty from January 1986 to May 1986, December 1990 to May 1991, and from March 2003 to July 2004 with additional service in the Army National Guard.

This matter comes before the Board of Veterans' Appeals (Board) on appeal of July 2005 and September 2006 rating actions by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Louis, Missouri. [Due to the location of the Veteran's residence, the jurisdiction of his appeal remains with the RO in North Little Rock, Arkansas.]

In November 2009, the Board remanded the Veteran's claim for additional evidentiary development. A supplemental statement of the case was issued in February 2011 by the VA Appeals Management Center (AMC), which continued the denial of his claims. As will be described in greater detail below, the Board finds that the remand directives have been fully completed. See Stegall v. West, 11 Vet. App. 268 (1998); Dyment v. West, 13 Vet. App. 141, 146-47 (1999).

The Board acknowledges that the RO did not specifically adjudicate a claim for service connection for a psychiatric disability other than PTSD in the September 2006 rating action on appeal. Significantly, however, the United States Court of Appeals for Veterans Claims (Court) has held that a claim for service connection for psychiatric symptoms should not be limited to consideration of a specific diagnosis where the pleadings and evidence suggest a claim of broader scope. Clemons v. Shinseki, 23 Vet. App. 1 (2009). Here, medical evidence of record reflects psychiatric diagnoses other than PTSD such as depression and dysthymic disorder. Accordingly, the Board will consider the matter of service connection for a psychiatric disorder other than PTSD. 

In Bernard v. Brown, 4 Vet. App. 384 (1993), the United States Court of Appeals for Veterans Claims (the Court) held that before the Board may address a matter that has not been addressed by the RO, it must consider whether the claimant has been given adequate notice of the need to submit evidence or argument, an opportunity to submit such evidence or argument, and an opportunity to address the question at a hearing, and whether the claimant has been prejudiced by any denials of those opportunities. Although the RO denominated the claim as one for PTSD, the Board finds that the Veteran is not prejudiced by the Board adjudicating a claim of service connection for all psychiatric disorders. As will be discussed below, the VA has obtained all available medical records, which included diagnoses of psychiatric disorders other than PTSD. The RO, in a letter dated in June 2006 asked for evidence of "a relationship between your current disability and an injury, disease, or event in military service." Moreover, in an April 2011 brief, the Veteran's representative specifically argued that the Board should apply the Court's decision in Clemons in light of his diagnosis of major depressive disorder. As such there is no harm to the Veteran in the Board's adjudication of this issue. 

The issues of entitlement to service connection for tinnitus, bilateral hearing loss and a vision impairment are addressed in the REMAND portion of the decision below and are REMANDED to the RO via the Appeals Management Center (AMC) in Washington, DC.


FINDINGS OF FACT

1. The preponderance of the competent and credible evidence is against finding that a psychiatric disorder was diagnosed in service or that any current psychiatric disorder is due to the Veteran's military service. 

2. The competent and credible evidence of record does not indicate that tuberculosis or a chronic sinus disability currently exist. 

3. There has been no demonstration by competent and credible medical evidence, or competent and credible lay evidence, that hypertension, which was first documented more than one year after the Veteran's active duty, is related to such service.


CONCLUSIONS OF LAW

1. The statutory presumption of soundness on enlistment has not been rebutted by clear and unmistakable evidence. 38 U.S.C.A. § 1111 (West 2002).

2. A psychiatric disorder, to include PTSD, was not incurred in or aggravated by active military service. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2002); 38 C.F.R. §§ 3.303, 3.304 (2010).

3. Tuberculosis was not incurred in or aggravated by military service and may not be presumed to have been incurred in service. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2002); 38 C.F.R. § 3.303, 3.307, 3.309 (2010).

4. A sinus disability was not incurred in or aggravated by military service. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2002); 38 C.F.R. § 3.303 (2010). 

5. Hypertension was not incurred in or aggravated by military service and may not be presumed to have been incurred in service. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2002); 38 C.F.R. § 3.303, 3.307, 3.309 (2010).





REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

After the evidence has been assembled, the Board is responsible for evaluating the entire record. 38 U.S.C.A. § 7104(a) (West 2002). When there is an approximate balance of evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. See 38 U.S.C.A. § 5107 (West 2002); 38 C.F.R. § 3.102 (2010). 

Indeed, in Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990), the Court stated that "a veteran need only demonstrate that there is an 'approximate balance of positive and negative evidence' in order to prevail." To deny a claim on its merits, the preponderance of the evidence must be against the claim. See Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. at 54.

Furthermore, the Board notes that it has reviewed all of the evidence in the claims file. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the Veteran or obtained on his behalf be discussed in detail. Rather, the Board's analysis will focus specifically on what evidence is needed to substantiate the issues adjudicated herein and what the evidence in the claims file shows, or fails to show, with respect to these claims. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000). 

I. The Veterans Claims Assistance Act of 2000 (VCAA)

The Board has given consideration to the VCAA. The VCAA includes an enhanced duty on the part of VA to notify a claimant as to the information and evidence necessary to substantiate claims for VA benefits. The VCAA also redefines the obligations of VA with respect to its statutory duty to assist claimants in the development of their claims. See 38 U.S.C.A. §§ 5103, 5103A (West 2002). 

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a) (West 2002); 38 C.F.R. § 3.159(b) (2010); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. VCAA notice should be provided to a claimant before the initial unfavorable agency of original jurisdiction (AOJ) decision on a claim. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004).

In March 2006, the Court issued its decision in the consolidated appeal of Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006) and held that the VCAA notice requirements of 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a "service connection" claim. As previously defined by the courts, those five elements include: (1) veteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. Upon receipt of an application for "service connection," therefore, VA is required to review the information and the evidence presented with the claim and to provide the claimant with notice of what information and evidence not previously provided, if any, will assist in substantiating or is necessary to substantiate the elements of the claim as reasonably contemplated by the application. This includes notice that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded.

In the present case, VA issued VCAA notice letters to the Veteran on August 19, 2004, March 31, 2006, and June 8, 2006, prior to the initial adjudication of his claims. These letters informed the Veteran of what evidence was required to substantiate his service connection claims and of his and VA's respective duties for obtaining evidence. The Board incorporates by reference the Bernard discussion in the Introduction pertaining to the psychiatric claim. The Veteran was also advised of the general elements necessary to substantiate a claim for service connection, so he was not harmed. A March 20, 2006 letter, along with the March 31, 2006 and the June 8, 2006 letters mentioned above, informed the Veteran as to the law pertaining to the assignment of a disability rating and effective date as the Court required in Dingess. Thus, the record indicates that the Veteran received appropriate notice pursuant to the VCAA.

The VCAA also provides that VA shall make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate a claim for VA benefits, unless no reasonable possibility exists that such assistance would aid in substantiating the claim. The law provides that the assistance provided by VA shall include providing a medical examination or obtaining a medical opinion when such an examination or opinion is necessary to make a decision on the claim. An examination is deemed "necessary" if the record does not contain sufficient medical evidence for VA to make a decision on the claim. See 38 U.S.C.A. § 5103A (West 2002); 38 C.F.R. § 3.159 (2010).

As discussed in the Introduction portion of this decision, in November 2009, the Board remanded the Veteran's case to the AMC in order to gather additional medical treatment records. Following this remand, the AMC requested the Veteran identify or submit any additional records he might have in a December 2009 letter. While no additional treatment records were identified by the Veteran, the AMC obtained updated copies of the Veteran's VA treatment records. Therefore, the Board finds that the November 2009 remand directives were substantially completed. See Stegall and Dyment, both supra.

Further, in the present appeal, the Board finds that reasonable efforts have been made to assist the Veteran in obtaining evidence necessary to substantiate his claims, and that there is no reasonable possibility that further assistance would aid in substantiating such claims. In particular, the record contains the Veteran's service treatment records, VA outpatient medical records, lay statements and VA examination reports. 

The Board has carefully reviewed the Veteran's statements and concludes that he has not identified further evidence not already of record. 

As the Board will discuss in detail in its analysis below, the Veteran was provided with a general VA examination in December 2004. The report of this examination reflects that the examiner reviewed the Veteran's past medical history, recorded his current complaints, conducted an appropriate physical examination and rendered appropriate diagnoses consistent with the remainder of the evidence of record. See Barr v. Nicholson, 21 Vet. App. 303 (2007); Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). The Board therefore concludes that the examination is adequate for adjudication purposes. See 38 C.F.R. § 4.2 (2010). 

The Board observes that the Veteran has not been afforded a VA examination specifically tailored to his claims of service connection for a psychiatric disability, tuberculosis, sinusitis, or hypertension, and that medical opinions regarding the etiology of these claimed disabilities have not been obtained. For reasons explained immediately below, however, such examinations and medical opinions are not necessary.

Under McLendon v. Nicholson, 20 Vet. App. 79 (2006), in initial service connection claims, the VA must provide a VA medical examination when there is (1) competent evidence of a current disability or persistent or recurrent symptoms of a disability; (2) evidence establishing that an event, injury, or disease occurred in service; (3) an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the veteran's service; and (4) insufficient competent medical evidence on file for VA to make a decision on the claim.

With respect to the Veteran's tuberculosis and sinusitis claims, as will be discussed below, the Veteran has not been diagnosed with tuberculosis or sinusitis. Further, while the Veteran's private treatment records document that he had a positive purified protein derivative (PPD) test in October 2005, the record does not credibly indicate that he has had persistent recurrent symptoms of tuberculosis. There is also no credible evidence that the Veteran has been diagnosed with sinusitis following his separation from service or that he has had persistent recurrent symptoms of a sinus disability. Accordingly, McLendon element (1) has not been met for the Veteran's tuberculosis and sinusitis claims. 

With respect to the Veteran's psychiatric disability claim, tuberculosis and hypertension claims, the record is missing critical evidence of an event, injury, or disease that occurred in service, McLendon element (2). In the absence of evidence of in-service disease or injury, referral of this case for an opinion as to etiology would, in essence, place the examining physician in the role of a fact finder. This is the Board's responsibility. In other words, any medical opinion which provided a nexus between the Veteran's claimed disability and his military service would necessarily be based solely on the Veteran's incredible assertions regarding what occurred in service. The Court has held on a number of occasions that a medical opinion premised upon an unsubstantiated account of a claimant is of no probative value. See, e.g., Swann v. Brown, 5 Vet. App. 229, 233 (1993) [generally observing that a medical opinion premised upon an unsubstantiated account is of no probative value, and does not serve to verify the occurrences described]; Reonal v. Brown, 5 Vet. App. 458, 461 (1993) [the Board is not bound to accept a physician's opinion when it is based exclusively on the recitations of a claimant]. 

The facts of this case are different than the facts in Charles v. Principi, 16 Vet. App. 370 (2002), in which the Court held that VA erred in failing to obtain a medical nexus opinion where evidence showed acoustic trauma in service and a current diagnosis of tinnitus. Significantly, in this case there is no competent evidence of current tuberculosis or sinusitis or credible evidence of persistent recurrent symptoms of these disabilities. There is also no credible evidence of an in-service psychiatric disease, tuberculosis or hypertension or symptoms thereof. A remand ordering a medical examination would therefore serve no useful purpose. Accordingly, the Board has determined that a medical opinion is not necessary in the instant case. 

The Board additionally observes that all appropriate due process concerns have been satisfied. See 38 C.F.R. § 3.103 (2010). The Veteran has been accorded the opportunity to present evidence and argument in support of his claims. He has declined to exercise his option of a personal hearing. 

Based on the foregoing, the Board finds that all relevant facts have been properly and sufficiently developed in this appeal and that no further development is required to comply with the duty to assist the Veteran in developing the facts pertinent to his claim. Essentially, all available evidence that could substantiate the claim has been obtained. There is no indication in the file that there are additional relevant records that have not yet been obtained. Thus, the Board will proceed to a decision. 

II. Law and Regulations 

In general, service connection may be granted for disability or injury incurred in or aggravated by active military service. 38 U.S.C.A. § 1110, 1131 (West 2002); 38 C.F.R. § 3.303 (2010). Service connection may also be granted for any injury or disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. See 38 C.F.R. § 3.303(d) (2010).

In order to establish service connection for the claimed disorder, there must be (1) competent and credible evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) competent and credible evidence of a nexus between the claimed in-service disease or injury and the current disability. See Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see also Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). The determination as to whether these requirements are met is based on an analysis of all the evidence of record and the evaluation of its credibility and probative value. See Baldwin v. West, 13 Vet. App. 1, 8 (1999). 

Service connection for certain chronic diseases, such as hypertension and tuberculosis, may also be established on a presumptive basis by showing that the disease manifested itself to a degree of 10 percent or more within one year from the date of separation from service for hypertension, and three years from the date of separation for tuberculosis. 38 U.S.C.A. §§ 1101, 1112, 1113 (West 2002 & Supp. 2010); 38 C.F.R. §§3.307(a)(3), 3.309(a) (2010).

For VA rating purposes, hypertension means that the diastolic pressure is predominantly 90 or greater, and isolated systolic hypertension means that the systolic pressure is predominantly 160 or greater, with a diastolic pressure of less than 90. 38 C.F.R. § 4.104, Diagnostic Code 7101 (2010).

Service connection presupposes a current diagnosis of the claimed disability. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). The Court has held that the "current disability" requirement is satisfied "when a claimant has a disability at the time a claim for VA disability compensation is filed or during the pendency of that claim . . . even though the disability resolves prior to the Secretary's adjudication of the claim." See McClain v. Nicholson, 21 Vet. App. 319 (2007).

In order for service connection to be awarded for PTSD, three elements must be present: (1) a current medical diagnosis of PTSD; (2) credible supporting evidence that a claimed in-service stressor actually occurred; and (3) medical evidence of a causal nexus between the current PTSD symptomatology and the claimed in-service stressor. See 38 C.F.R. § 3.304(f) (2010).

In order to grant service connection for PTSD to a non-combat veteran, there must be credible evidence to support the veteran's assertion that the stressful event occurred. A medical opinion diagnosing PTSD does not suffice to verify the occurrence of the claimed in-service stressors. Cohen v. Brown, 10 Vet. App. 128, 142 (1997); Moreau v. Brown, 9 Vet. App. 389, 395- 396 (1996).

During the pendency of the appeal, VA amended its adjudication regulations governing service connection for posttraumatic stress disorder (PTSD) by liberalizing, in certain circumstances, the evidentiary standard for establishing the required in-service stressor. See 75 Fed. Reg. 39843 (July 13, 2010). These new regulations address a claimant's fear of hostile military or terrorist activity. These regulations are not pertinent to the Veteran's case, however, as the record does not indicate that he has been diagnosed with PTSD. 

III. A Psychiatric Disability, To Include PTSD 

The Veteran contends that he has a psychiatric disability as a result of his military service. Specifically, in an August 2006 statement, he indicated that his mental health deteriorated when he "was asked to serve his country overseas." The Veteran further indicated that he became depressed while thinking that he might be involved in combat and that while on active duty, was told by his commanding officers that he was a poor soldier "who would never make it back to the States alive" or see his "loved ones or other family members again." See the August 2006 statement. 
 
The evidence of record indicates that the Veteran has provided differing accounts of his military service while receiving medical treatment. For example, in February 2007, the Veteran reported that he served in Operation Desert Storm and in Iraq from 2004-2005 as a tank operator and a heavy equipment engineer. He stated that while he did not participate in combat, he witnessed a "soldier with a severed arm when the tank lid fell on him and another soldier whose finger was severed." In a separate report of his military service, the Veteran reported that he was involved in firefights and exposed to dangerous situations while serving in Iraq. Finally, in a December 2005 statement in support of his claim for tuberculosis, the Veteran reported that he "was given a medical deferral from going to Iraq and assigned to the medical unit at Ft. Leonard Wood" Missouri.

The Veteran's service treatment records are negative for any complaints, treatment, or diagnosis of a psychiatric disorder. His June 2004 post-deployment health assessment is also negative for any complaints of a psychiatric disorder. In fact, as discussed in greater detail below, the Veteran's recent contentions of foreign and combat service are directly contradicted by his official service records. For the reasons set forth below, the Board places no weight of probative value on the Veteran's statements of foreign or combat service or an in-service psychiatric disease or symptomatology. See Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997) [In adjudicating a claim, the Board is charged with the duty to assess the credibility and weight given to evidence]. 

As noted above, the Veteran contends that he served in the Persian Gulf in the early 1990s and again from 2003-2005. See a February 2007 VA treatment record. While the Veteran had active duty service from December 1990 to May 1991 and March 2003 to July 2004, his DD-214s for these time periods do not indicate that he had any foreign service. These documents also do not indicate that the Veteran received any awards or decorations indicative of foreign service. 

In addition to the lack of foreign service documented in his DD-214s, the Veteran's service treatment records indicate that he never left the United States. Specifically, between December 1990 and May 1991, the Veteran received medical treatment at Fort Hood, Texas, and underwent a separation examination at Fort Rucker, Alabama. His post-deployment health assessments conducted in June 2003 and June 2004 document that the Veteran was deployed to Fort Leonard Wood, Missouri. Furthermore, his service treatment records during his March 2003 to July 2004 period of active duty service all occurred in the United States. 

In addition to the lack of foreign or combat service, the Veteran's report of service as a combat engineer or a tank operator are also contradicted by his official service department records. While the Board acknowledges that the Veteran received armor crewman training while in the Army National Guard, his DD-214s indicate that his military occupational specialty (MOS) for all three periods of active duty service was a heavy construction equipment operator. 

In short, the Board rejects the Veteran's reports of service in the Persian Gulf, as being unbelievable. As a result, his claims of involvement in combat or witnessing injuries therein are similarly unbelievable. Cf. Samuels v. West, 11 Vet. App. 433, 436 (1999) [where a claimant sought service connection for posttraumatic stress disorder, based upon multiple stressors occurring during "combat" in Vietnam, and the record clearly showed he had never served in Vietnam, no presumption of credibility attached to his statements of his in-service claimed stressors]. [Here, unlike in Samuels, there is no presumption of credibility.]

To the extent the Veteran contends that he had a psychiatric disability or psychiatric symptoms during service, the Board observes that his service treatment records are completely negative for any complaints, treatment or diagnosis of a psychiatric disorder. In fact, an October 2003 in-service treatment documents that the Veteran denied having any depression. Furthermore, in his June 2004 post-deployment health assessment, the Veteran specifically denied having any psychiatric symptomatology. See Curry v. Brown, 7 Vet. App. 59, 68 (1994) [contemporaneous evidence has greater probative value than history as reported by the veteran]. The June 2004 assessment was prepared by the Veteran, thus when specifically asked about his mental status, he denied any symptoms. Such records are more reliable, in the Board's view, than the Veteran's current assertions made in connection with his claim for monetary benefits from the government. See Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) [VA cannot ignore a veteran's testimony simply because the veteran is an interested party; personal interest may, however, affect the credibility of the evidence]. The Veteran's current statements are inconsistent with statements he made contemporaneous to service regarding his mental status. 

Given all of the foregoing, including the lack of any objective evidence of the Veteran having foreign service, and the service treatment records which do not document any complaints or treatment for psychiatric symptomatology, the Board finds his statements of an in-service injury or disease not credible and therefore, lacking in probative value. As a result, the second Shedden element has not been satisfied and the Veteran's claim fails on this basis alone. 

For the sake of completeness, the Board will briefly address the remaining two Shedden elements. See Luallen v. Brown, 8 Vet. App. 92, 95-6 (1995), citing Holbrook v. Brown, 8 Vet. App. 91, 92 (1995) [the Board has the fundamental authority to decide a claim in the alternative].

Following a positive PTSD screen, the Veteran underwent a VA mental health consultation in March 2006. This treatment record indicates that the Veteran reported service in Iraq and that his mood had decreased since his mother's death a year ago. He was diagnosed with major depressive disorder and bereavement. Similarly, in August 2009, the Veteran reported that he was involved in combat while in Iraq and was diagnosed with depression NOS (not otherwise specified). While the Veteran has claimed that he currently has PTSD, the evidence of record does not include a valid diagnosis of PTSD. In fact, the Veteran's post-service treatment records indicate that he does not meet the requirements for PTSD. See an August 2009 VA treatment note. 

The Board acknowledges that the Veteran works as a Certified Nursing Assistant in a retirement home. The extent of his medical training and experience in psychiatric disorders, if any, has not been established. Regardless, any such expertise would be outweighed by the opinion of a doctor, who has a greater level of training and expertise than a nurse. As a result, the Board places greater weight of probative value on the statements from the August 2009 VA psychiatrist who indicated that PTSD was not present. See Black v. Brown, 10 Vet. App. 297, 284 (1997) [in evaluating the probative value of medical statements, the Board looks at factors such as the individual knowledge and skill in analyzing the medical data]; see also Madden, supra. Notwithstanding the lack of a PTSD, based on the Veteran's diagnoses of depression NOS and major depressive disorder, the Board finds that a current disability has been demonstrated. 

With respect to the third Shedden element, in the absence of an in-service injury or disease, it follows that a nexus is also lacking. Such is the case here. The evidence of record does not contain a competent and credible statement attempting to link a psychiatric disorder to the Veteran's military service. Again, the Veteran's contention of symptoms in service and ever since service on account of events that purportedly occurred in service is not credible.

To the extent that the Veteran and his representative contend that a medical relationship exists between his psychiatric disabilities and service, any such statements offered in support of the Veteran's claim do not constitute competent evidence and cannot be accepted by the Board. See Espiritu v. Derwinski, 2 Vet. App. 492, 494-95 (1992); see also 38 C.F.R. § 3.159(a)(1) [competent medical evidence means evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions]. As noted above, while the Veteran has worked as a nursing assistant, the evidence of record does not indicate that he has the medical training or experience necessary to comment on complicated medical questions such as the etiology of his psychiatric disorders. Moreover, as discussed in detail above, the Board has found the Veteran to be not credible based on multiple factually inaccurate statements that he has made to the VA and his health care providers. The representative similarly does not have such expertise in this medically complex matter. 
 
In sum, for the reasons and bases expressed above, the Board finds that the preponderance of the evidence is against the Veteran's claim of entitlement to service connection for a psychiatric disability. Of particular importance to the Board in this matter are the Veteran's official service department records which indicate that he did not have foreign service and his service treatment records which indicate that he did not have any psychiatric symptomatology during service. Accordingly, the Veteran's service connection claim is denied.

 A. Additional Comment

The Board observes that various VA treatment records document that the Veteran reported having "longstanding unhappiness, poor self-esteem beginning in childhood" and that these symptoms became persistent with his deployment to Iraq. See a September 2008 VA mental health treatment note. As noted above, the Board finds the Veteran's account of service in Iraq to be not credible and the underlying basis for these statements is therefore invalid. See, e.g., Swann v. Brown, 5 Vet. App. 229, 233 (1993) [generally observing that a medical opinion premised upon an unsubstantiated account is of no probative value, and does not serve to verify the occurrences described]; Reonal v. Brown, 5 Vet. App. 458, 461 (1993) [the Board is not bound to accept a physician's opinion when it is based exclusively on the recitations of a claimant]. Furthermore, the Veteran has not argued that he entered service with a pre-existing psychiatric disability. In fact, he has specifically stated that his problems began when he was asked to serve his country overseas. See the August 2006 statement. 

There is a statutory presumption of soundness on enlistment. Specifically, a veteran will be considered to have been in sound condition when examined, accepted and enrolled for service, except as to defects, infirmities, or disorders noted at entrance into service, or where clear and unmistakable (obvious or manifest) evidence demonstrates that an injury or disease existed prior thereto. 38 U.S.C.A. § 1111 (West 2002); 38 C.F.R. § 3.304(b) (2010). 

In this case, the Veteran's August 1985 entrance examination did not reveal any psychiatric disabilities. Nor do any of the Veteran's other service treatment records. Since the statutory presumption of soundness on enlistment has not been rebutted, the matter of aggravation is moot. 

IV. Tuberculosis and Sinusitis. 

In a December 2005 statement, the Veteran indicated that he served with individuals who were diagnosed with tuberculosis and that he was denied a nursing position after separating from service because his tuberculosis test came back positive. While the Board acknowledges that the Veteran was noted to have a positive purified protein derivative (PPD) test in an October 2005 private treatment record, the record does not indicate that he has been diagnosed with tuberculosis. 

The Board notes that a positive PPD test, is not the same as a medical diagnosis of active tuberculosis - nor is it by itself considered a disability that can be service-connected. Rather, a PPD test result is considered to be a laboratory finding used in exploring a possible diagnosis of tuberculosis; a purified protein derivative examination is used to test for exposure to mycobacterium tuberculosis. See DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1498, 1962 (30th ed. 2003). Thus, service connection is not warranted based solely on a showing of a positive PPD skin test. Furthermore, while the Board acknowledges that granulomas were identified in the Veteran's lungs during the October 2005 private treatment record, the physician who documented this symptom did not diagnose the Veteran with tuberculosis or indicate that this was a symptom of this disability. 

The Board observes that the October 2005 private treatment record which reported the positive PPD test stated that it was a "newly positive PPD" test result, and as the Veteran is a health care professional, he would be started on medication. At that time the Veteran denied having shortness of breath, wheezing, cough, weight loss or jaundice. Subsequent medical treatment records, including VA tuberculosis assessments, note that the Veteran had a positive "TB skin test in the past" and was treated with medication, but do not diagnose tuberculosis or indicate that the Veteran ever had this disability. See VA treatment records dated August 2007 and August 2009. Thus the Veteran has not been diagnosed with tuberculosis during the appeal period or within three years of his separation from service. 

While not determinative to his tuberculosis claim, the Board pauses to note that the Veteran's December 2005 statement that he could not secure a position as a nursing assistant due to his positive PPD test is contradicted by the evidence of record. Specifically, as noted by the October 2005 private physician, and in various VA treatment records, the Veteran has secured such a position working in a nursing home. His statements to the contrary reflect continued factually inaccurate statements when seeking medical treatment and monetary benefits from the government. 

Similar to his tuberculosis claim, while service treatment records note assessments of rhinosinusitis, at no time during the current appeal has the Veteran been diagnosed with sinusitis according to extensive post-service medical records. When examined during the December 2004 general VA examination, the Veteran's "frontal sinuses, ethmoid sinuses, maxillary sinuses and sphenoid sinuses [were] clear." The VA examiner noted that he had a "negative sinus series." There is no competent or credible evidence to the contrary. 

To the extent the Veteran contends that he has tuberculosis or a sinus disability, any such statements offered in support of his claim do not constitute competent evidence and cannot be accepted by the Board. While the Veteran has prior experience as a nursing assistant, the record does not indicate that he has the requisite medical experience or training necessary to diagnose medically complex diseases such as tuberculosis or a sinus disability. 

The Veteran has been accorded ample opportunity to present evidence in support of his claim, i.e., competent evidence of tuberculosis or a sinus disability. He has failed to do so. See 38 U.S.C.A. § 5107(a) [it is the claimant's responsibility to support a claim for VA benefits]. The Court has held that "[t]he duty to assist is not always a one-way street. If a Veteran wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the putative evidence." See Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). 

In the absence of tuberculosis or a sinus disability at any time during the appeal period, service connection may not be granted. See Degmetich v. Brown, 104 F.3d 1328 (Fed. Cir. 1997) & Gilpin v. Brown, 155 F.3d 1353 (Fed. Cir. 1998) [service connection cannot be granted if the claimed disability does not exist]. See also McClain v. Nicholson, 21 Vet. App. 319 (2007). Accordingly, the first Shedden element has not been met, and the Veteran's claims fail on this basis alone. In the absence of a claimed disability, there is no need to discuss the remaining two Shedden elements. 

In conclusion, for the reasons and bases expressed above, the Board finds that the preponderance of the evidence is against the Veteran's claims of entitlement to service connection for tuberculosis or sinusitis. The benefit sought on appeal is accordingly denied.

V. Hypertension 

Upon review, the Veteran's service treatment records are negative for any complaints of, treatment for, or diagnosis of hypertension during service. While the Board recognizes that the Veteran reported that he was not sure if he had, or ever had, high or low blood pressure during an April 1991 self-report of medical history, the reviewing physician did not identify or diagnose hypertension. An April 1994 Report of Medical History prepared in between periods of service shows the Veteran reported that he had hypertension but the April 1994 medical examination report showed no such diagnosis. In fact, while the Veteran's service treatment records contain multiple blood pressure readings, at no point was he diagnosed with hypertension during service. An elevated blood pressure reading is not in and of itself hypertension according to the December 2004 VA examiner. While the Veteran currently contends that he experienced symptoms of hypertension in service, on the June 2004 assessment he denied any relevant symptoms. 

During a December 2004 general VA examination, the Veteran reported that he was diagnosed with hypertension during a mobilization screening and told to "watch it." As noted immediately above, his treatment records do not document any such diagnosis. Furthermore, the December 2004 VA examiner noted that "there is [currently] insufficient evidence to warrant a diagnosis of" hypertension. In fact, the first evidence that the Veteran had been diagnosed with hypertension comes from a May 2006 VA treatment record which documents that he had been proscribed lisinopril. See also an October 2006 VA treatment record [indicating that lisinopril had been proscribed to treat the Veteran's hypertension]. 

Based on the above, the Board concludes that the evidence is against the Veteran's claim of entitlement to service connection for hypertension. Although the evidence shows that the Veteran currently suffers from the disease, there is no credible medical evidence that he had hypertension during service or during the presumptive period. The second Shedden element has not been met and the Veteran's claim fails on this basis alone. 

In the absence of an in-service disease or injury, it follows that a competent and credible nexus is also lacking. Indeed, the evidence of record does not include any competent or credible statements attempting to link the Veteran's hypertension to his military service.

The Board has considered the Veteran's contention that his hypertension began during service and has continued since that time. As noted above, however, the December 2004 VA examiner indicated that the Veteran did not have hypertension and the Board places greater weight of probative value on the neutral and objective statements made by the December 2004 VA examiner who was an Advanced Registered Nurse Practitioner (presumed skilled in hypertension otherwise the examiner would not have been designated to administer the exam by VA), rather than those made by the Veteran in connection with his claim for monetary benefits from the government. See Black, supra; see also Cartright, supra. The fact remains that blood pressure tests during service and immediately after service did not reveal the disease. 

Furthermore, the Veteran's claim that he was diagnosed with hypertension during service is contradicted by the contemporaneous evidence of record which does not document any such disease. See Curry v. Brown, 7 Vet. App. 59, 68 (1994) [contemporaneous evidence has greater probative value than history as reported by the veteran]. Under these circumstances, the Board places no weight of probative value in the Veteran's statements.

Accordingly, the Board concludes that the preponderance of the evidence is against the Veteran's claim of entitlement to service connection for hypertension. In arriving at the decision to deny the claim, the Board has considered the applicability of the "benefit-of-the-doubt" rule. However, as there is not an approximate balance of evidence, that rule is not applicable in this case. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Ortiz v. Principi, 274 F. 3d 1361 (Fed. Cir. 2001); Gilbert, 1 Vet. App. at 49.


ORDER

Entitlement to service connection for a psychiatric disorder, to include PTSD is denied.

Entitlement to service connection for tuberculosis, claimed as a positive tuberculin tine test is denied. 

Entitlement to service connection for sinusitis is denied.

Entitlement to service connection for hypertension is denied.


REMAND

After having carefully considered the matter, and for reasons expressed immediately below, the Board believes that the issues of entitlement to service connection for bilateral hearing loss, tinnitus, and vision impairment must be remanded for further development. 

As an initial matter, the Board notes that the record indicates that the Veteran has been receiving ongoing VA treatment. Accordingly, on remand, any of the Veteran's VA treatment records which are pertinent to his claims should be obtained. 38 U.S.C.A. § 5103A(c) (West 2002); see also Bell v. Derwinski, 2 Vet. App. 611 (1992) (VA medical records are in constructive possession of the agency, and must be obtained if the material could be determinative of the claim). 

I. Bilateral Hearing Loss and Tinnitus

As noted above, in order for service connection to be granted, three elements must be present: (1) a current disability; (2) in-service incurrence of disease or injury; and (3) a competent and credible nexus. See Shedden, supra. 

The threshold for normal hearing is from 0 to 20 decibels, and higher threshold levels indicate some degree of hearing loss. Hensley v. Brown, 5 Vet. App. 155, 157 (1993).

The determination of whether a veteran has a disability based on hearing loss is governed by 38 C.F.R. § 3.385 (2010). For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz (Hz) is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. See 38 C.F.R. § 3.385 (2010).

In this case, the Veteran's service treatment records document that he was placed on an H2 profile in February 2001. See Odiorne v. Principi, 3 Vet. App. 456, 457 (1992) [observing that the "PULHES" profile reflects the overall physical and psychiatric condition of the veteran on a scale of 1 (high level of fitness) to 4 (a medical condition or physical defect which is below the level of medical fitness for retention in the military service); the "H" reflects the state of the "hearing and ear." Furthermore, an in-service audiogram conducted after June 2003 documented that the Veteran was routinely exposed to noise. Accordingly, an in-service disease or injury has been demonstrated. 

The Veteran was afforded a VA audio examination in December 2004. At the time of the examination, the Veteran's complete service treatment records had not been associated with his claims folder. As a result, the examiner only commented on one period of the Veteran's active duty service, from February 2003 to July 2004. Furthermore, during this examination, the Veteran reported that his tinnitus developed while he was deployed during Operation Desert Storm. (As noted above, the evidence of record does not indicate that the Veteran had any foreign service, to include participation in Operation Desert Storm.) 

In discussing the etiology of the Veteran's bilateral hearing loss, the VA examiner noted that there was no significant change in the Veteran's hearing between an in-service February 2003 hearing test and the test conducted during the December 2004 VA examination. As a result, the examiner indicated that "hearing loss is not caused by or a result of the Veteran's active duty service between February 2003 and July 2004." The examiner did not comment on the impact, if any, of the Veteran's other periods of active duty service on his diagnosed bilateral hearing loss. 

In discussing the etiology of the Veteran's tinnitus, the examiner noted that the Veteran's current findings show an improvement in high frequency hearing when compared with the February 2003 in-service hearing test. Therefore, it was determined that "the etiology of the Veteran's tinnitus cannot be resolved without resorting to mere speculation." The examiner did not, however, comment on whether his inability to comment on the etiology of the Veteran's tinnitus reflects the need for additional information or that she has exhausted the limits of current medical knowledge as to what may be causing the tinnitus. See Jones v. Shinseki, 23 Vet. App. 382, 389 (2010). 

Under these circumstances, the Board finds that an additional VA examination is necessary. As noted above, the Veteran's complete service treatment records were not available for review by the December 2004 VA examiner and the examiner did not comment on the impact, if any, of the Veteran's active duty service from January 1986 to May 1986 and from December 1990 to May 1990. The examiner also did not comment on why an opinion as to the etiology of the Veteran's tinnitus could not be provided without resorting to speculation. The examination report is also unclear as to whether the examiner was aware that the Veteran did not have any foreign service. 

Once the Secretary undertakes an effort to provide a Veteran with an examination when developing a service connection claim, even if not statutorily obligated to do so, he must provide an adequate one or, at a minimum, notify the claimant why one will not or cannot be provided. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). Here VA attempted to provide the Veteran with a VA audiological examination in December 2004. For the reasons set forth above, the Board finds that this examination is inadequate and an additional VA examination must be conducted.

II. A Vision Disability

Available post-service medical records indicate that the Veteran has been diagnosed with multiple refractive errors as well as bilateral inferior nasal quadrantanopsia. See an April 2009 VA treatment record. 

The agency of original jurisdiction has denied the Veteran's claim for service connection for a vision disability on the basis that this condition is a congenital or developmental defect not subject to service connection. In this regard, the Board notes that, the law provides that refractive errors of the eye are developmental defects and are not diseases or injuries within the meaning of applicable legislation. 38 C.F.R. § 3.303(c) (2010). In the absence of a superimposed disease or injury, service connection may not be allowed for refractive error of the eyes, including myopia and hyperopia, even if visual acuity decreased in service, as this is not a disease or injury with the meaning of the applicable legislation relating to service connection. 38 C.F.R. §§ 3.303(c), 4.9 (2010). Accordingly, such a disorder cannot be service-connected, absent evidence of aggravation by a superimposed disease or injury. See Monroe v. Brown, 4 Vet. App. 513, 514-515 (1993); Carpenter v. Brown, 8 Vet. App. 240, 245 (1995); VAOPGCPREC 67-90 (July 18, 1990); VAOPGCPREC 82-90 (July 18, 1990); and VAOPGCPREC 11-1999 (Sept. 2, 1990). 

In this case, the Veteran's service treatment records document that he complained of vision problems during service. Specifically, the Veteran reported vision difficulty while on the firing range in May 2003. In January 2004, he reported watering eyes, headaches while using his glasses and double vision while looking through the sight posts of a weapon. He was diagnosed with hyperopia on both occasions. 

While the Veteran was afforded a VA examination in September 2004, the examiner did not comment on whether the Veteran's diagnosed refractive errors of the eyes underwent a permanent increase in severity during such active duty, and if so, whether the permanent increase in severity was due to the natural progression of the disease. Also, on examination, the examiner should be asked to express an opinion regarding the etiology of any other eye disability (to include bilateral inferior nasal quadrantanopsia) shown on evaluation. See McLendon v. Nicholson, 20 Vet. App. 79 (2006); Charles v. Principi, 16 Vet. App. 370 (2002); and 38 C.F.R. § 3.159(c)(4) (2010) [a medical examination or opinion is necessary if the information and evidence of record does not contain sufficient competent medical evidence to decide the claim]. 

Accordingly, the case is REMANDED for the following action:

1. Obtain records of any hearing loss, tinnitus or vision treatment that the Veteran may have received at the VA Medical Centers in Leavenworth, Kansans and Kansas City from November 2007, or from the VA Medical Center in Fayetteville, Arkansas and the VA Community Based Outpatient Clinic in Forth Smith, Arkansas from November 2009. All records so obtained should be associated with the Veteran's claims folder.

2. Then, accord the Veteran an appropriate VA examination to determine the nature, extent, and etiology of any hearing loss or tinnitus he may have. The Veteran's claims folder, including a copy of this remand, must be made available to the examiner. All diagnostic testing deemed to be necessary by the examiner should be accomplished. 

For any hearing loss disability or tinnitus diagnosed on examination, in light of all service treatment records now associated with the claims file, the examiner should opine as to whether it is at least as likely as not, i.e., a 50 percent probability or greater, that such disability had its clinical onset in service or is otherwise related to active duty, to include his conceded acoustic trauma therein. 

If the examiner indicates that he/she cannot provide the requested opinion without resort to speculation, he/she should indicate whether the inability to provide a definitive opinion was due to (a) a need for further information, or because the limits of medical knowledge have been exhausted regarding the etiology of the Veteran's hearing loss or tinnitus; or (b) whether this is an instance where a definitive opinion cannot be provided because required information is missing, or can no longer be obtained or current medical knowledge yields multiple possible etiologies with none more likely than not the cause of the claimed disability. A clear rationale for all opinions must be provided and a discussion of the facts and medical principles involved would be of considerable assistance to the Board.

3. Then, accord the Veteran an appropriate VA examination to determine the nature, extent, and etiology of his refractive errors of the eyes and any other vision disability that he may have. The Veteran's claims folder, including a copy of this remand, must be made available to the examiner. All diagnostic testing deemed to be necessary by the examiner should be accomplished. 

The examiner is asked to discuss the following:

A. Whether the Veteran's diagnosed hyperopia, or any other refractive error of the eye, underwent a permanent increase in severity during his active service, and if so, whether the permanent increase in severity during service was due to the natural progress of the condition. 

B. For any vision disability other than a refractive error diagnosed on examination, the examiner should opine as to whether it is at least as likely as not, i.e., a 50 percent probability or greater, that such disorder had its clinical onset in service or is otherwise related to active duty. 

Complete rationale for all opinions expressed should be provided. 

4. Following completion of the above, adjudicate the issue of entitlement to service connection for bilateral hearing loss, tinnitus, and a vision disability. If the decisions remain adverse to the Veteran, he and his representative should be provided with a supplemental statement of the case. An appropriate period of time should be allowed for response. 

No action is required of the Veteran until he is notified by the RO; however, the Veteran is advised that failure to report for any scheduled examination may result in the denial of his claim. 38 C.F.R. § 3.655 (2010). The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2010).



______________________________________________
TANYA A. SMITH
Acting Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs